**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| DENNIS KILIAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. N22C-05-111 EMD |
| THE INTERNATIONAL SOCIETY OF | ) |
| INTERDISCIPLINARY ENGINEERS | ) |
| LLC and GLOBAL KNOWLEDGE | ) |
| SOLUTIONS LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

Submitted: October 10, 2022
Decided: January 18, 2023

*Upon Defendants The International Society of Interdisciplinary Engineers LLC and Global Knowledge Solutions LLC's Motion for Partial Dismissal*
***GRANTED IN PART, DENIED IN PART***

David A. Felice, Esq., Bailey & Glasser, LLP, Wilmington, Delaware, David Wechsler, Esq., Daniel Grossman, Esq., Harris St. Laurent & Wechsler LLP, New York, New York; *Attorneys for Plaintiff.*

Jessica C. Watt, Esq., Ballard Spahr LLP, Wilmington, Delaware, Steven Suflas, Esq., Ballard Spahr LLP, Salt Lake City, Utah, Joseph J. Bailey, Esq., Ballard Spahr LLP, Philadelphia, Pennsylvania; *Attorneys for Defendants.*

**DAVIS, J.**

## I.     INTRODUCTION

Plaintiff Dennis Kilian commenced this action against The International Society of

Interdisciplinary Engineers LLC ("ISIE") and Global Knowledge Solutions LLC ("GKS")

(collectively, "Defendants").[1]  Mr. Kilian seeks relief for an alleged breach of his Employment

---

[1] D.I. No. 1

Contract (the "Contract") with ISIE, and violations of wage and labor statutes in New Jersey and California.

The Complaint contains four separate claims for relief. Mr. Kilian seeks damages for: (i) Breach of Contract, (ii) Failure to Pay Wages in Violation of New Jersey Wage Payment Law, (iii) Failure to Pay Wages Owed in Violation of California Labor Code § 200 *et seq.* and Request for Penalties, and (iv) Violation of California Business and Professions Code § 17200 *et seq.*

Defendants filed their Motion for Partial Dismissal (the "Motion") on July 7, 2022. The Motion asks the Court to dismiss Counts II, III, and IV, and reject Mr. Kilian's calculation of damages under Count I. Mr. Kilian responded with an Opposition to the Motion on August 12, 2022. Defendants filed their Reply on August 29, 2022. The Court held a hearing on the Motion on October 10, 2022. At the conclusion of the hearing, the Court took the Motion under advisement.

For the reasons discussed below, the Motion is **GRANTED** as to Counts III and IV, **DENIED** as to Counts I and II without prejudice.

## II.  FACTUAL BACKGROUND

### A. THE PARTIES

Mr. Kilian is a resident of California.[2] Mr. Kilian was a resident of New Jersey when he signed the Contract.[3]

The American Society of Mechanical Engineers ("ASME") is a New York 501(c)(3) non-profit organization with its principal place of business in New York, New York.[4] Mr. Kilian began working for ASME in September 2016.[5]

---

[2] Compl. ¶ 2.
[3] *Id*. ¶ 16.
[4] Defendants' Motion for Partial Dismissal ("Defs.' Mot.") at 1.
[5] Compl. ¶ 8.

On or about April 2020, ASME formed the ISIE as a holding company for purposes of housing other for-profit subsidiaries.[6] ISIE is a Delaware limited liability company with its principal place of business in New York, New York.[7] In November 2020, ISIE acquired Camelot US Acquisition 7 Co. ("Camelot") and Camelot's subsidiary, Techstreet LLC ("Techstreet").[8] Thereafter, in mid-December 2020, ISIE converted Techstreet into GKS as an indirect subsidiary of ASME.[9] GKS is a single member Delaware limited liability company with its principal place of business in Ann Arbor, Michigan.[10]

### B. Mr. Kilian's Employment with GKS

On or around December 16, 2020, Mr. Kilian entered a five-year Employment Contract (the "Contract") with ISIE to serve as the President of GKS.[11] New Jersey law governed the Contract.[12] The Contract provided for a set base salary of $300,000 per year:

> The Executive shall be entitled to receive a base salary (the "Base Salary") at a rate of $300,000.00 per annum, payable in bi-weekly equal installments in accordance with the Company's payroll practices, with such increases as the Board may determine or as provided in the following subparagraph (b). Once increased, such the higher amount shall constitute the Executive's Base Salary.[13]

The Contract provided for an increase in Mr. Kilian's base salary contingent on GKS meeting annual revenue milestones:

> The Base Salary shall be increased during the Employment Term upon the Company's achievement of revenue milestones (the "Revenue Milestones") during each calendar year of the employment term (an "Employment Year") based upon revenues recorded in the Company's ordinary course of business. Increases of the Base Salary shall be effective at such time or times in an Employment Year as each

---

[6] *Id.* ¶ 9.
[7] *Id.* ¶ 3.
[8] *Id.* ¶ 10.
[9] *Id.* ¶¶ 10-11.
[10] *Id.* ¶¶ 4-5.
[11] *Id.* ¶ 15. Mr. Kilian was a New Jersey resident when the Contract was executed. *Id.* ¶ 16. Immediately prior to entering the Contract, Mr. Kilian served as ASME's Managing Director of Corporate Sales in their New Jersey office. Defs.' Mot. at 3.
[12] Employment Agreement ("Contract") § 9.6.
[13] Contract § 2.2.

new Revenue Milestone is achieved. In the following Employment Year, Base Salary increases shall occur upon achievement of Revenue Milestones for such Employment Year more than the Revenue Milestones previously achieved. The Revenue Milestones and corresponding increases to Base Salary are outlined in Schedule I annex hereto and made a part hereof.[14]

The Contract provided for an annual bonus of 35% of Mr. Kilian's annual base salary at the discretion of GKS's Board:

> In addition to the Executive's Base Salary, the Company may pay to the Executive during the Employment Term an annual bonus (the "Annual Bonus") based upon the Executive's performance, the amount of which bonus shall be thirty-five (35%) percent of the Executive's Base Salary and solely within the discretion of the Company as determined by the Board.[15]

Contract Section 5.1. addresses termination. Sections 5.1.1(a)-(b) relate to termination prior to expiration of the Employment Term and provide:

> (a) If, prior to the expiration of the Employment Term, the Executive's employment is terminated by the Company for Cause or by the Executive without Good Reason, the Executive shall be entitled only to his accrued but unpaid Base Salary ("Accrued Base Salary") through and including the date of termination.

> (b) If prior to the expiration of the Employment Term, the Executive's employment with the Company is terminated by the Company Without Cause or by the Executive for Good Reason, the Executive shall be entitled only to (i) his Accrued Base Salary through and including the date of termination; (ii) his Base Salary from the day after the termination date through the normal expiration date of the Employment Term, payable in equal installments on the same terms as at the end of the Employment Term; and (iii) the benefits set forth under Section 4 of this Agreement through the normal expiration date of the Employment Term.[16]

Contract Section 5.4 defines "Good Reason," stating:

> Termination by Executive for "Good Reason" shall mean termination by the Executive because of (i) a material reduction in the nature or scope of Executive's position as President or his authorities, powers, duties, or responsibilities in such capacity; or (ii) a material diminution in the 'Executive's base compensation or target bonus below the amount as of the date of this Agreement or as increased during the course of his employment with the Company; or (iii) a requirement that that [*sic*] the Executive report to a corporate officer or employee of the Company

---

[14] *Id.* § 2.2(b). "Employment Term" is defined in the Contract at Section 1.3.
[15] *Id.* § 2.3.
[16] *Id.* §§ 5.1.1(a)-(b).

4

or entity created by a merger or acquisition instead of reporting directly to the Board/Management Committee . . .[17]

Mr. Kilian claims that, contrary to the GKS Operating Agreement and the Employment Agreement, he was required to report to a corporate officer who was not a member of the GKS Board.[18] Mr. Kilian alleges that Thomas Costabile, ASME's Executive Director and CEO, "repeatedly exerted control over GKS's operations, issued directives to Mr. Kilian as GKS's President, and otherwise acted as if he and ASME controlled GKS."[19] Mr. Kilian also alleges that he attempted to limit Mr. Costabile's role in the daily operations and control of GKS, and these attempts resulted in business conflicts between Mr. Kilian and Mr. Costabile.[20]

On or around March 12, 2021, Mr. Kilian relocated to California while continuing to serve as the President of GKS.[21] On March 22, 2021, Mr. Kilian alleges he was notified of an organizational change at GKS and that he would be removed as the President of GKS on March 22, 2021.[22] On April 15, 2021, Mr. Kilian provided Defendants a written notice of termination for Good Reason, stating that his demotion from the position of President was a "material reduction in the nature or scope of [Mr. Kilian's] authorities, powers, duties or responsibilities" and the requirement for Mr. Kilian to "report to a corporate officer or employee and not directly to the [GKS] Board/Management Committee" constituted Good Reason under the Contract.[23]

Mr. Kilian asserts that, after Defendants received his Good Reason notice, Defendants failed to make any of the required severance payments as required under Sections 5.1.1(b) and 5.4.[24] Mr. Kilian also alleges that contrary to Section 5.1.1(b), Defendants only provided him

---

[17] *Id.* § 5.4.
[18] Compl. ¶ 43.
[19] *Id.* ¶ 44.
[20] *Id.* ¶¶ 45-55.
[21] *Id.* ¶ 39.
[22] *Id.* ¶¶ 57-58.
[23] *Id.* ¶¶ 62-63.
[24] *Id.* ¶ 77.

with benefits defined in Section 4 until September 15, 2021, a period of five months after Mr. Kilian's termination.[25]

Defendants deny Mr. Kilian's assertions that the termination of the Contract was due to "Good Reason." [26]  Defendants argue that Mr. Kilian was, in fact, fired "for Cause."[27] Defendants argue that Mr. Kilian's "Good Reason" notice to Defendants was insufficient to constitute valid notice as required under Section 5.1.1(b).  Defendants highlight that while Mr. Kilian's notice stated that Mr. Kilian "had good reason to resign,"  Mr. Kilian "remain[ed] open to staying in a new, mutually satisfactory executive capacity (my preference).  If not, I ask that we agree on a separation date that will allow a seamless transition."[28]

## C. THE CALIFORNIA LITIGATION

On August 2, 2021, Mr. Kilian filed a complaint in the Superior Court of the State of California in the County of Placer (the "California Action") against ASME, ISIE, and GKS (the "California Defendants").  The California Action asserts claims that are substantially like those asserted here.[29]  The California Defendants removed the California Action to the United States District Court for the Eastern District of California (the "District Court") and moved to dismiss that action for lack of personal jurisdiction over the California Defendants.[30]

The District Court found that the Cal. Defendants did not purposefully avail themselves to jurisdiction in California.  The District Court opined, "Plaintiff's choice of residence cannot serve as the basis for personal jurisdiction, otherwise defendants would be subject to personal jurisdiction in any state to which Plaintiff happens to relocate.  For these reasons, Plaintiff's own

---

[25] *Id.* ¶¶ 76-77, 77 n.3.
[26] Defs.' Mot. at 8.
[27] *Id.*
[28] *Id.*
[29] *Id.* at 2. ASME is not a party to the current action.
[30] *Id.*

6

contacts with California do not establish specific jurisdiction over GKS either."[31]  The District Court granted the dismissal on January 21, 2022.[32]

### III.  PARTIES' CONTENTIONS

#### A.  THE MOTION

Defendants seek to dismiss Counts II, III, and IV of the Complaint.  In addition, Defendants dispute the damage calculations offered in Count I.  Defendants contend that Mr. Kilian's contract-based damage claims under Count I are limited to amounts set out in the Contract.  Defendants also argue that Mr. Kilian's New Jersey wage statute claims lack merit as the severance pay does not constitute "wages" under the New Jersey's Wage Payment Law. Defendants maintain that Mr. Kilian's claims under California law should be dismissed because the Contract's choice-of-law provision asserts New Jersey law, and—as recognized by the District Court—California law does not apply.

Defendants also assert that the Affidavit of Dennis Kilian (the "Affidavit") filed with Kilian's Answering Brief was procedurally improper.  As such, Defendants ask the Court to disregard the Affidavit for considerations on the Motion.

#### B.  THE OPPOSITION

Mr. Kilian contends that Defendants removed him from his position at president of GKS in breach of the Contract, which triggered Mr. Kilian's option to terminate the Contract with "Good Reason."  Mr. Kilian asserts damages from the unpaid severance payments, expected raises and bonuses, monetary value of the benefits under Section 4 of the Contract, and per diem payout of unused vacation days.

---

[31] *Kilian v. American Society of Engineers*, 2022 WL 198563, at 2-3* (E.D. Cal. Jan. 21, 2022).
[32] *See id.*

7

Mr. Kilian also argues that for the relevant period, Mr. Kilian was both a New Jersey and California employee of Defendants and under both states' labor and wage statutes, severance payments are categorized as "wages." In turn, any employers found to be violating the statutes are subject to penalties, with additional liquidated damages provided to the employee plaintiffs.

Mr. Kilian filed his affidavit in support of the Opposition, alleging additional facts and arguments in support of the Complaint. While Mr. Kilian recognized that the Affidavit is premature at this stage of the proceedings, Mr. Kilian alleges that the information offered in the Affidavit is relevant to the choice-of-law dispute and cites to caselaw to support the admission of the Affidavit for the Court's consideration.

## IV.  STANDARD OF REVIEW

Upon a motion to dismiss, the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[33] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[34]

In considering a motion to dismiss under Civil Rule 12(b)(6), the court generally may not consider matters outside the complaint.[35] However, documents that are integral to or incorporated by reference in the complaint may be considered.[36] "If . . . matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for

---

[33] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy*, 2010 WL 5825353, at *3 (Del. Super. Oct. 27, 2010).
[34] *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998).
[35] Super. Ct. Civ. R. 12(b).
[36] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 70 (Del. 1995).

summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."[37]

## V.     DISCUSSION

### A.  THE AFFIDAVIT IS PROCEDURALLY BARRED

The Affidavit, and portions of the Answering Brief citing to the Affidavit, will not be considered by the Court for purpose of ruling on the Motion.

Under Civil Rule 7(a), parties are permitted to file a complaint, answer, and related responses. Filings outside of pleadings can only be considered if the documents are "integral to a plaintiff's claim and incorporated in the complaint."[38] In context of contractual disputes, Delaware courts may consider affidavits offering extrinsic evidence when "there is uncertainty in the meaning and application of contract language . . ."[39]

Mr. Kilian offers *Sonitrol Corp. v. Signature Flight Support Corp.* to assert that an affidavit submitted with an opposition to a motion to dismiss may be admitted by this Court for consideration of relevant facts. However, the *Sonitrol* court only allowed the admission of the affidavit in the case because the court found that the additional facts contained in the affidavit would have permitted the complaint to survive the motion to dismiss.[40] The narrow exception to Civil Rule 7(a) found in *Sonitrol* does not apply here. While the Affidavit does provide additional information generally relevant to the present matter, the alleged facts contained in the Affidavit either overlap with what is already contained in the Complaint or assert new facts that do not assist the Court in the present analysis.

---

[37] Super. Ct. Civ. R. 12(b).
[38] *In re Santa Fe Pacific Corp. S'holder Litig.*, 669 A.2d at 69.
[39] *Eagle Industries, Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).
[40] Plaintiff's Answering Brief ("Pl.'s Answering Br.") at 22 (citing *Sonitrol Corp. v. Signature Flight Support Corp.*, 2006 WL 1134775, at *1 (Del. Super. March 24, 2006)).

As such, the Court will not consider the Affidavit or portions of Mr. Kilian's Answering Brief relying on the Affidavit.

## B. THE MOTION IS DENIED AS TO COUNT I.

Mr. Kilian seeks damages arising out of the termination of the Contract and Defendants' failure to pay severance as per the Contract terms. Mr. Kilian alleges damages amounting to at least $2,645,535.82, calculated by adding (i) his base salary, with salary increases for each year, (ii) annual bonuses of 35% proportionate to the base salary with the annual salary increases, (iii) monthly cost of the benefits provided under Section 4, including "family medical, vision, and dental insurance," and (iv) monetary conversion of 125 vacation days corresponding with the increased base salary per year.[41]

Defendants argue that Mr. Kilian's damage are calculated in a manner inconsistent with the express language of the Contract. Defendants claim that the Contract's severance clause only provides for the base salary, calculated at the time of termination, to be paid in equal installments on the same terms as agreed upon for the base salary.[42] Defendants argue that the annual salary increases were conditioned upon GKS meeting its annual financial goals which were not satisfied prior to Mr. Kilian's termination. Defendants also contend that the bonuses were discretionary and required approval by the GKS Board, and that the benefits were not payable at a *per diem* rate as a part of the severance clause.[43]

Section 5 of the Contract provides that if Mr. Kilian's employment is terminated either by the Company without cause, or by Mr. Kilian with Good Reason:

> [T]he Executive shall be entitled only to (i) his Accrued Base Salary through and including the date of termination; (ii) his Base Salary from the day after the termination date through the normal expiration date of the Employment Term,

---

[41] Compl. ¶¶ 77(a)-(c).
[42] Defs.' Mot. at 22.
[43] *Id*.

10

payable in equal installments on the same terms as at the end of the Employment Term, and (iii) the benefits set forth under Section 4 of this Agreement through the normal expiration date of the Employment Term.[44]

The language is unambiguous: severance payments are calculated at the time of the termination. The clause does not provide for calculation of annual salary increases, nor bonuses, regardless of whether Mr. Kilian "reasonably expected to receive" them.[45]

Mr. Kilian's inclusion of the cash-out monetary calculation of benefits is similarly not supported by the language of the Contract. Section 4 provides:

> General Benefits. The Executive shall be eligible to participate in the company's health and benefit programs, consistent with those benefit programs provided to other Company's senior executives.

> Vacation. The Executive shall be entitled to twenty-five (25) days paid vacation each year following the Company's applicable policies.[46]

The Termination Clause provides that the term "benefits" means being able to maintain health and benefit programs provided by Defendants for the remainder of the Employment Term. The Contract does not include the option to take a payout of the "$2,906.82 in monthly payments for family medical, vision, and dental insurance coverage" nor does it provide that the vacation days can be "cashed out" at the end of the employment term. In short, when Mr. Kilian's employment ended at GKS, Mr. Kilian was only entitled to his Base Salary of $300,000 as severance payments without the addition of "expected" bonuses, raises, or a per diem cash out of unused vacation days.

The Court does find that there presently is a factual dispute as to the *basis* of Mr. Kilian's termination at GKS. If the termination was a result of "Good Reason" by Mr. Kilian, or

---

[44] Contract § 5.1.1(b). Accrued Base Salary is defined as Mr. Kilian's accrued but unpaid Base Salary through and including the date of termination.
[45] Compl. ¶ 77.
[46] Contract § 4.

"Without Cause" by the Company, as per Section 5.1.1(b), Mr. Kilian had the contractual right to terminate the Contract and receive severance payments equal to his Base Salary ($300,000 at the time of the termination) along with benefits under Section 4 until the end of the Employment Period. If the termination was a result of Defendants having valid "For Cause" or by Mr. Kilian "Without Good Reason," then Mr. Kilian was only entitled to his salary up to the date of his termination date.

Civil Rule 12(b)(6) requires that the Court accept all non-conclusory and well-pled allegations as true and draw all reasonable inferences in favor of the non-moving party.[47] Mr. Kilian alleges that he terminated the Contract for "Good Reason." As per the Contract, if Mr. Kilian had a valid "Good Reason" to terminate the contract, Defendants were required to pay Mr. Kilian a severance equal to his Base Salary set at the time of the termination. Defendants failed to do so. While the Defendants argue that Mr. Kilian was fired "for cause" and thus ineligible to receive any amount of severance under the Contract, Defendants do not demonstrate that they are legally entitled to overcome the factual allegations contained in the Complaint at this time.

As such, the Complaint sufficiently pleads a valid cause of action under Count I, and therefore, the Motion to dismiss Count I is **DENIED.** The Court's decisions regarding the unambiguous language of certain provisions of the Contract will apply going forward in this civil proceeding.

### C. THE MOTION IS DENIED AS TO COUNT II.

The parties dispute whether severance payments constitute "wages" under New Jersey law, as the categorization of severance payments as "wages" would create statutory liability for Defendants under New Jersey wage law. However, due to the ongoing factual dispute as to

---

[47] Del. Super. Ct. Civ. R. 12(b).

whether Mr. Kilian terminated the Contract "for Good Reason" or if he was fired "For Cause," accepting all non-conclusory and well-pled allegations as true and drawing all reasonable inferences in favor of the non-moving party under Rule 12(b)(6), the Court denies the Motion to Dismiss Count II at this junction for the reasons discussed below.

Mr. Kilian asserts that Defendants failed and/or refused to pay all wages due and owed in the form of the severance payments in violation of the New Jersey Wage Payment Law ("NJWPL"). N.J.S.A. 34:11-4.4 states: "No employer may withhold or divert any portion of an employee's wages unless: a) the employer is required or empowered to do so by New Jersey or United States law . . . ."[48] NJWPL defines wages as: "[D]irect monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto."[49]

Mr. Kilian argues that Defendants violated NJWPL when they "unreasonably and without good faith, knowingly failed and/or refused to pay Mr. Kilian wages owed to him," including the severance payments consisting of the Base Salary, annual bonus, and benefits for the remainder of the five-year employment term as required under the Contract.[50] Mr. Kilian contends that this failure was a violation of NJWPL, and under N.J.S.A. § 34:11-4.10(c), Defendants are liable for liquidated damages "equal to not more than 200 percent of the wages lost or of the wages due, together with costs and reasonable attorney's fees."[51] Mr. Kilian asserts damages amounting to $7,936,607.46 under Count II, including liquidated damages under NJWPL.[52]

---

[48] NJWPL N.J.S.A. § 34:11-4.4.
[49] *Id.* § 34:11-4.1.
[50] Compl. ¶ 85.
[51] Pl.'s. Answering Br. at 7 (citing N.J.S.A. § 34:11-4.10(c)).
[52] Compl. ¶ 86.

Mr. Kilian asserts that the only excluded payments from the NJWPL definition of "wages" are "supplementary incentives and bonuses," and cites to cases supporting the argument that a set annual salary constitutes earned wages at the time the parties enter the employment contract. However, the cases offered by Mr. Kilian fail to address the specific issue of severance payments constituting wages, and do not assist the Court for the present issue at hand.[53]

Defendants argue that the NJWPL definition of "wages" does not include severance payments. Defendants parse out the wording of the statutory definition of "wages" and state that severance is not "direct monetary compensation for labor or services rendered," but that severance is "an exchange for services **not** rendered."[54] Defendants maintain that "rendered" implies that services must have been previously completed by the employee, *i.e.*, in the past, and severance payments are "purely prospective, paid out after services are no longer being rendered."[55] Defendants contend that severance falls into the category of "supplementary incentives" which are expressly excluded from the NJWPL definition of wages.

Defendants cite certain caselaw to support their arguments that severance pay does not constitute wages. In *Moran v. DaVita, Inc.*, the United States District Court for the District of New Jersey opined: "Therefore, this Court concludes the 'wages' as defined in the Wage Payment Law were not intended to embrace payments owed to an employee pursuant to a contractual obligation but not tethered to the performance of services by the employee."[56]

---

[53] Pl.'s Answering Br. at 8-12. The cited cases discuss issues of deferred salaries, earned commissions and bonuses, and bankrupt companies and are not applicable to the current case.

[54] Defs.' Mot. at 11. (emphasis in original).

[55] *Id.*

[56] *Moran v. DaVita, Inc.*, 2009 WL 792074, at 18* (D.N.J. Mar. 23, 2009).

Defendants also rely on the legislative history of the NJWPL to show that earlier iterations of the bill defined wages to include "any other benefits arising out of an employment contract."[57] As Defendants contend, this language was not included in the final definition of "wages" in the NJPWL and shows the intent of the New Jersey legislature to exclude severance as a form of "other benefits" from protections offered under NJWPL.

The Court notes that the crux of the issue falls on what constitutes "services rendered." Mr. Kilian contends that his services were rendered at the time he was employed by Defendants, and the severance payments "are guaranteed without contingencies or qualification; vested and earned through the direct services Mr. Kilian performed for GKS, but paid later."[58] In other words, the right to the severance payments became vested and earned at the time Mr. Kilian entered into the Contract and does not constitute "supplementary incentives and bonuses" as excluded in the NJWPL definition of "wages." Defendants argue that the language of the "wages" definition on its face does not include severance, as wages are only owed for services actually rendered by the employee, and severance is payment made *after* the termination of an employee and thus not "earned" by prior services rendered.[59]

Severance, in its very nature, is designed to pay a terminated employee for their services previously rendered to their employer while they were still employed. In turn, the severance payments can be considered wages, as wages are intended to compensate an employee for their already-rendered labor. The U.S. Supreme Court offers guidance on this issue in *U.S. v. Quality Stores, Inc.*, where the Court found that severance payments constituted wages.[60] Severance

---

[57] Defs.' Mot. at 13.
[58] Pl.'s Answering Br. at 8.
[59] Defs.' Mot. at 11.
[60] *See U.S. v. Quality Stores, Inc.*, 572 U.S. 141 (2014). While the Court made this determination in context of FICA and federal taxation purposes, it is relevant and persuasive caselaw as applied to the current case.

payments are vested when the employee is hired by the employer, and unlike regular wages which are only paid upon actual work completed by the employee, the *Quality Stores* Court noted that "severance payments made to terminated employees are 'renumeration for employment.' Severance payments are, of course, 'renumeration,' and common sense dictates that employees receive the payments 'for employment.'"[61] In other words, severance payments constitute wages for "services" which are considered rendered by the employee's execution of the employment agreement. "[S]everance payments are made in consideration for employment – for a 'service performed' by 'an employee for the person employing him.'"[62]

Severance is also a part of what is likely a negotiated compensation package between the employee and the employer. The mutual understanding may be that if the relationship deteriorates between the two parties or some event occurs resulting in the termination of the employee, the employee will receive the severance as payment for the employee's services already rendered to the employer. Simply put, severance payments may be wages.

Having established the above, Defendants have not sufficiently met their burden under Civil Rule 12(b)(6). Defendants' arguments do not overcome the active factual dispute of whether the termination of the Contract was by Mr. Kilian for "Good Reason," or by Defendants "for Cause." This is a critical issue that requires resolution before the Court can adjudicate on the interpretation of NJWPL. Under the present circumstances, accepting all non-conclusory and well-pled allegations as true and drawing all reasonable inferences in favor of the non-moving party, the Court **DENIES** the Motion to dismiss Count II.

Unlike the Court's ruling on whether certain provisions of the Contract are ambiguous, the Court may revisit whether "severance" constitutes wages under the NJWPL. The Court is

---

[61] *Id.* at 146.
[62] *Id.*

not comfortable that the legal analysis on this issue has been completely/exhaustively analyzed under New Jersey law. This case is in the initial stages of litigation and the issue may need to be revisited later.

### D. THE COURT WILL GRANT THE MOTION AS TO COUNT III.

Mr. Kilian argues that because Defendants failed to pay him the severance payments when Mr. Kilian was a resident of California, Defendants should be subject to penalties under the California Labor Code.[63]

California Labor Code § 200 defines wages as:

"[A]ll amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other methods of calculation."[64]

Mr. Kilian states that Defendants failed to pay Mr. Kilian owed wages, including severance payments. In turn, Defendants violated California Labor Code Section 203, which provides penalties to employers who fail to pay earned wages to their employees.[65] Mr. Kilian also cites to California caselaw which provides that California law treats severance payments as wages under the Labor Code.[66]

Defendants argue that California law does not apply here. Defendants assert that the Contract is governed by New Jersey law, and Defendants have no significant contacts with California. Defendants state that Mr. Kilian previously brought a suit against Defendants in the California Action on the same factual allegations, and the District Court dismissed the action

---

[63] Mr. Kilian initially pleaded the applicability of the California statute as an alternative to the New Jersey claims under Count II, but in the subsequent Answering Brief, Mr. Kilian asserted both New Jersey and California statutes against Defendants.

[64] Cal. Labor Code § 200.

[65] Compl. ¶¶ 90-91.

[66] Pl.'s Answering Br. at 15 (citing *Battista v. Fed. Deposit Ins. Corp.*, 195 F.3d 1113, 120 n.8 (9th Cir. 1999), *Willig v. Exiqon, Inc.*, 2012 WL 10375, at *13 (C.D. Cal. Jan. 3, 2012)).

after finding that Defendants' contacts with California "are unconnected to [Mr. Kilian]'s claims which arise solely out of the alleged breach of the [Contract]."[67]

Mr. Kilian argues that a choice-of-law determination is premature at this stage. The Court disagrees. The issue is ripe for consideration currently, as Counts III and IV rely on the applicability of California law.

When faced with a choice-of-law issue, Delaware applies the Second Restatement's most significant relationship test to find which state's substantive law applies to the case.[68] The Court looks at three factors for the choice-of-law analysis: (i) determining if the parties made an effective choice of law through their contract; (ii) if not, determining if there is an actual conflict between the laws of the different states each party urges should apply; (iii) if so, analyzing which state has the most significant relationship.[69]

The first factor requires looking at whether a choice of law has already been effectively decided by the parties in the contract. Here, the Section 9.6 of the Contract provides that the Contract is "construed, interpreted, and governed in accordance with the laws of the State of New Jersey."[70] The second and third factors do not require further exploration as the choice-of-law analysis is satisfied by the first factor.

Furthermore, Mr. Kilian's arguments that California law should apply because he resided in California at the time of the termination is not persuasive. While Mr. Kilian alleges that he was employed by Defendants in California from March 12, 2021, to approximately April 15, 2021, Mr. Kilian does not sufficiently plead whether Defendants directed Mr. Kilian to move to California on behalf of, or in support of, Defendants' business or as a requirement of Mr.

---

[67] Defs.' Mot. at 15.
[68] *See Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 464 (Del. 2017).
[69] *Id.* at 464.
[70] Contract § 9.6.

Kilian's employment. Mr. Kilian argues that Defendants were aware of Mr. Kilian's intent to move to California, and that such understanding was material to Mr. Kilian's entry to the Contract; however, the facts before the Court show Mr. Kilian's move to California was a unilateral decision made before the parties even entered the Contract, and it was not made with the intent to directly benefit Defendants.

Defendants also offer persuasive caselaw where California federal courts denied the application of California labor laws against employers who had no contact with California except for the residency of their employee.[71] In *Shorter v. Peaches Uniform, Inc.*, the Eastern District of California found that when an employee moved to California for personal reasons and unrelated to her job, and the employer merely permitted the employee to continue working remotely in California.[72] California labor laws could not be applied against the employer in a wrongful termination suit without purposeful, significant contact by the employer with the state.[73] Defendant cite to *Oman v. Delta Air Lines, Inc.*[74] In *Oman*, the United States District Court for the Northern District of California found that the California Labor Code did not apply to the defendant employer when the plaintiff employee only worked a *de minimis* amount of time in California, and the defendant was not based in California.[75]

Mr. Kilian fails to meet the pleading standard for Count III. The Contract explicitly provides New Jersey law as the governing law of the agreement. None of Defendants are incorporated or have their principal place of business in California.[76] The pleadings do not provide that Defendants have any additional assets, business, or employees in California. Mr.

---

[71] Defs.' Mot. at 16 (citing *Shorter v. Peaches Uniform, Inc.*, 2012 WL 3882322 (E.D. Cal. Sept. 6, 2012)).
[72] *See Shorter*, 2012 WL 3882322, at *1.
[73] *See id.*
[74] 230 F.Supp.3d 986, 992-94 (N.D. Cal. 2017).
[75] *Id*. at 992-94.
[76] ISIE is a Delaware incorporated company with its principal place of business in New York, New York. GKS is a Delaware incorporated company with its principal place of business in Ann Arbor, Michigan.

Kilian was employed by Defendants in California for a *de minimis* period before the Contract was terminated.

Finally, the Court must recognize what happened in the California Action. The District Court dismissed the California Action because the California Defendants were not subject to personal jurisdiction in California. As such, the District Court did not find that Mr. Kilian's action was subject to the application of California employment law. Moreover, the District Court did not find that Defendants caused injury in California in a manner that subjected Defendants to jurisdiction. Whether explicitly or implicitly addressed in a decision, these are critical points when making a personal jurisdiction ruling. The District Court held that Defendants were not subject to personal jurisdiction in California. Logically, this means that California law was not applicable to the facts plead by Mr. Kilian.

For the reasons above, the Court will **GRANT** the Motion as to Count III.

### E.  THE COURT WILL **GRANT** THE MOTION AS TO COUNT IV.

Mr. Kilian alleges that, in the alternative to Count III, Defendants violated the California Business and Professions Code § 17200 for failing to pay wages, constituting an unfair trade practice. The Code § 17200 states:

> "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business Professions Code."[77]

Kilian offers no additional arguments as to the applicability of the Code in either the Complaint or the Answering Brief.

The Court's reasoning as to Count III applies to Count IV. As previously discussed, New Jersey substantive law applies to the current matter, not California law. Mr. Kilian fails to meet

---

[77] California Business and Professions Code § 17200.

20

the pleading standard for Count IV under Civil Rule 12(b)(6), and as such, the Court will **GRANT** the Motion to dismiss Count IV.

## VI. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED** as to Counts III and IV and **DENIED** as to Counts I and II.

**IT IS SO ORDERED.**

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:     File&ServeXpress